**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

CORJALON EVANS                                                                 PLAINTIFF

v.                                            4:20cv00421-BRW-JJV

DOMINIC BRUNER, *et al.*                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy

Roy Wilson.  Any party may serve and file written objections to this recommendation. Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  Your objections must be received in the office of the United States District Court Clerk

no later than fourteen days from the date of the findings and recommendations.  Failure to file

timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.      INTRODUCTION

Plaintiff sued Jefferson County, Arkansas, Sheriff Laffety Woods, Jr., along with Jailer

Dominic Bruner and Captain Edward Adams; he sued all Defendants in their personal and official

capacities.  (Doc. No. 2 at 1-2.)  Plaintiff is in custody at the W.C. Dub Brassell Adult Detention

Center.  He alleges on March 8, 2020, Defendant Bruner used excessive force against him after

1

Plaintiff hit Defendant Bruner.  (*Id*. at 4.)  According to Plaintiff, Defendant Bruner then sprayed him multiple times with mace and used the mace can to hit him in the head.  (*Id*.)  Plaintiff alleges that on multiple other occasions Defendant Bruner cursed at him or threatened him with violence.  (*Id*.)  Plaintiff asserts he "spoke with Captain Ed Adams[,] he didn't say anything."  (*Id*.)  While Plaintiff did not specifically say so, I take it that Plaintiff's conversation with Defendant Adams was about Defendant Bruner.

Plaintiff apparently spoke with Defendant Adams a second time about Defendant Bruner.  During the second conversation, Defendant Adams stated Defendant Bruner "wasn't going to be around [Plaintiff]."  (*Id*.)  Plaintiff maintains, however, that Defendant Bruner was around him after that, cursing or threatening him.  Plaintiff asserts that after filing grievances and reporting him, Defendant Bruner wrote Plaintiff up resulting in time under lockdown.  (Doc. No. 2 at 4.)  Plaintiff's personal capacity claims against Defendant Bruner were served.  (Doc. Nos. 5, 13.)  Plaintiff's remaining claims were dismissed.  (*Id*.)

Defendant Bruner has filed a Motion for Summary Judgment.  (Doc. Nos. 42-45.)  Plaintiff has responded (Doc. No. 46) and this matter is ripe for a decision.  After careful consideration, I recommend Defendant Bruner's Motion be granted and Plaintiff's claims be dismissed with prejudice.

## II.    SCREENING

The Prison Litigation Reform Act (PLRA) requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may

be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must be weighed in favor of Plaintiff. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "In other words, the § 1915(d) frivolousness determination, frequently made *sua sponte* before the defendant has even been asked to file an answer, cannot serve as a factfinding process for the resolution of disputed facts." *Id*. But whether a plaintiff is represented by counsel or is appearing *pro se*, his complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.   ANALYSIS

Plaintiff, a pretrial detainee, alleges Defendant Bruner used excessive force against him. In analyzing excessive force claims, courts in the Eighth Circuit apply an objective reasonableness standard. *Lombardo v. City of St. Louis*, 956 F.3d 1009, 1013 (8th Cir. 2020). Courts "assess the actions of each officer from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. In doing so, courts consider: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. (internal citation omitted).

Defendant Bruner contends he is entitled to qualified immunity on Plaintiff's personal capacity claims against them.  (Doc. No. 43 at 5.)  Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact.  *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions:  (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  *Id*.

In support of Defendant Bruner's Motion for Summary Judgment, he submitted with his statement of undisputed material facts a video of the incident involving Plaintiff.  (Doc. Nos. 44-1, 45.)  The video reflects a group of inmates in the Detention Center's dining area.  Plaintiff is

wearing a white bandana on his head, tied at places in knots to hold it in place. Inmates are lined up near a doorway on the left of the room. When Plaintiff is at the front of the line, he can been seen speaking to someone through the doorway. The person, or people, to whom Plaintiff is speaking are on the other side of the threshold and not visible. Approximately 17:31 minutes into the video, Plaintiff steps through the doorway and also disappears from view. Some seconds later Plaintiff backs out of the doorway, followed by Defendant Bruner who was holding what appears to be a can of mace in his right hand. (Doc. No. 45 at 17:51-17:56.) Plaintiff retreats; Defendant Bruner walks in Plaintiff's direction holding the can of mace. (*Id*. at 17:5618:06.) Plaintiff approaches Defendant Bruner, picking up a black object, and the two exchange words. Other inmates in the area step in and deescalate the situation. Defendant Bruner then goes back into the doorway, out of sight. Plaintiff again approaches the door and can be seen lunging toward Defendant Bruner with his fists up and balled. Another guard pulls Plaintiff back and again the situation deescalates. Defendant Bruner exits through the doorway and away from view.

Some 20 minutes or so later, Defendant Bruner enters the dining area from the doorway to the left. (*Id*. at 38:01.) He begins to walk around the room slowly with his hands in his pockets. (*Id*. at 38:31-38:41.) As he reaches the back right corner of the room, he is in Plaintiff's vicinity. Plaintiff was walking in front of Defendant Bruner, then turns and walks in the opposite direction past Defendant Bruner. (*Id*. at 40:06.) Once Plaintiff is a good distance away, he stops and faces Defendant Bruner, who has also turned around by that point. (*Id*. at 40:07.) Defendant Bruner, with his arms down, begins to approach Plaintiff. (Doc. No. 45 at 40:07-40:09.) Seemingly simultaneously, Defendant Bruner raises high his right hand holding the can of mace, and Plaintiff raises his left elbow to chin height and shifts his weight onto his right leg, which he had placed behind him. (*Id*. 40:09.) Plaintiff, with his left elbow raised, then lunges toward Defendant Bruner.

At that time, Defendant Bruner sprays Plaintiff with mace. (*Id*. at 40:09.) As the mist of the sprayed mace hangs in the air, Plaintiff, with his left elbow still raised, continues to move toward Defendant Bruner. Plaintiff then releases his cocked right arm striking Defendant Bruner twice.

In his deposition testimony, Plaintiff conceded that Defendant Bruner had not sprayed his mace at the time Plaintiff lunged.

| | |
|---|---|
| Question: | So at 40 minutes, nine seconds [Defendant Bruner's] holding his mace, correct? |
| Plaintiff: | I believe so. |
| Question: | But he has not sprayed it yet, also correct? |
| Plaintiff: | He was going -- I don't think he – I don't believe he sprayed it yet. I think he sprayed it at 11 or 12. |
| Question: | Okay. So 40 minutes nine seconds [Defendant Bruner's] holding his mace up and you're getting ready to throw a punch. At 40 minutes, 10 seconds you lunge at him to throw a punch and he sprays his mace at the same time, correct? |
| Plaintiff: | Um-huh. |
| Question: | You started to lunge at him – |
| Plaintiff: | Once I seen he was coming towards me, I was frightened for me life, so |
| Question: | So you threw a punch? He was walking towards you and you were scared -- |
| Plaintiff: | Um-huh. |
| Question: | -- so you threw a punch. Is that correct? |
| Plaintiff: | I believe so, because I knew he was coming towards me to attack me. |
| Question: | Okay. You thought he was going to attack you. So you punched him. Is that correct? |
| Plaintiff: | Because he had the mace shaken up. |

| | |
|---|---|
| Question: | Okay. |
| Plaintiff: | Um-huh. |
| Question: | And then so you punch him as he starts – as you start to punch him, he sprays his mace, correct? |
| Plaintiff: | Let me think. |
| Question: | Is that what you just saw?  He sprays his mace as you punch him? |
| Plaintiff: | Right. |
| Question: | And then – |
| Plaintiff: | And he uses excessive force, then what he's supposed to use. |
| Question: | So he started to punch back after he sprayed his mace and you kept punching? |
| Plaintiff: | Yes. |
| Question: | So you punch a couple of times there while he's spraying.  You punch two more times right there.  He stopped spraying and now you – he starts to punch back, about four times.  Is that correct? |
| Plaintiff: | It seemed like it. |
| Question: | Okay. |
| Plaintiff: | And he steady kept spraying as I was walking off – and as I'm walking off he's steady spraying the stuff.  Yeah.  He used over his limit, excessive force. |

(Doc. No. 44-2 at 23:9-25:8.)

In his response to Defendant Bruner's Motion for Summary Judgment, as in his deposition testimony, Plaintiff asserts Defendant Bruner continued spraying mace after the first spray.  (Doc. No. 46.)  In a detainee disciplinary report Plaintiff attached to his response, Defendant Bruner concedes that he "released multiple bursts of OC spray in [Plaintiff's] facial area . . . ."  (Doc. No 46.)

As shown in the video, after spraying mace Defendant Bruner returned Plaintiff's punch, shoved Plaintiff, and punched Plaintiff twice more with a closed right fist, the same fist in which Defendant Bruner was holding the mace; it appears Defendant Bruner strikes Plaintiff on the back or back of the head. (Doc. No. 45 at 40:09-40:16.) Next, Defendant Bruner begins to back away from the situation. (*Id*. at 40:16-40:17.) Plaintiff, who is behind a column, can be partially seen; he throws an object towards Defendant Bruner and it appears Defendant Bruner sprayed mace again at that time. (*Id*. at 40:19-21.) Plaintiff is then walked away by another officer to a sink.

Plaintiff has not come forward with any evidence establishing a genuine issue of fact in dispute. Viewing the evidence in the light most favorable to Plaintiff, and considering the factors set out in *Lombardo*, I find Defendant Bruner did not use excessive force in using multiple sprays of mace and striking Plaintiff. *See Lombardo*, 966 F.3d at 1014; *Burns v. Eaton*, 752 F.3d 1136, 1139-40. Plaintiff conceded he lunged at Defendant Bruner before Defendant Bruner sprayed the mace. Plaintiff punched Defendant Bruner. Defendant Bruner returned Plaintiff's punch, pushed Plaintiff, struck Plaintiff with a closed fist, and backed away. Plaintiff continued the incident with apparent ongoing resistance by throwing an object at Defendant Bruner. Defendant Bruner appears to have used the mace again at that time and the incident ended. Plaintiff walked away from the incident, and there is no evidence in the record of severe physical injury.

Under these circumstances, Defendant Bruner did not violate Plaintiff's constitution rights. Accordingly, Defendant Bruner is entitled to qualified immunity. As such, I recommend summary judgment be entered in Defendant Bruner's favor.

## IV.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendant Bruner's Motion for Summary Judgment (Doc. No. 42) be GRANTED.

2.    Plaintiff's claims against Defendant Bruner be DISMISSED with prejudice.

3.    This lawsuit be DISMISSED.

4.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 20th day of January, 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE